**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANTHONY SHANNON | | |
| Plaintiff, | | |
| v. | | 3:25-cv-01026 (SFR) |
| THE SUPPORTED LIVING GROUP LLC, | | |
| Defendant. | | |

**MEMORANDUM & ORDER**

Plaintiff Anthony Shannon filed suit against Defendant The Supported Living Group LLC ("Supported Living") on June 25, 2025 under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), alleging that Shannon was wrongfully denied overtime compensation for hours worked in excess of forty hours per workweek. Supported Living promptly moved to compel arbitration. ECF No. 18. For the reasons stated below, the Motion to Compel Arbitration is denied.

## I. BACKGROUND

### A. Factual Background

Anthony Shannon began working for The Supported Living Group LLC in April 2023 at the company's facility in Avon, Connecticut. Shannon Decl. ¶ 2, ECF No. 25-1. Shannon's last day of active work at Supported Living was November 29, 2023. Shannon Decl. ¶ 3. Shannon was on medical leave from November 29, 2023 to March 14, 2025, when Shannon's employment was terminated. Shannon Decl. ¶ 4. During his period of employment, Shannon remained an at-will employee. Shannon Decl. ¶ 5. At no point during the course of his

employment did Supported Living provide Shannon with any additional employment guarantees. *Id.*

While Shannon was on medical leave, he signed a "Residential Live-in Support Staff Agreement" form ("Agreement") on January 3, 2024,[1] which contained a clause stating: "Termination of Employment . . . If there are any legal disputes during or after your time of employment, by signing this document, you agree not to participate in class actions against the company and instead resolve any disputes through individual arbitration." Agreement 8-11, ECF No. 18-1.

Supported Living provides non-medical care to individuals with special needs through both in-home care and group homes. As a Direct Support Professional at the facility, Shannon's "job duties included cleaning, performing chores, assisting the resident[s], and transportation." Compl. ¶ 12.

The Complaint asserts that during his employment at Supported Living, Shannon was consistently required to work over forty hours a week, but despite the significant overtime required of and worked by Shannon, Shannon was nevertheless only compensated with "a straight salary each week, without regard to the number of hours he actually worked in a week." *Id.* ¶ 15.

[1] Shannon declares that although he does not recall signing the agreement, "the signature does appear to be mine." Shannon Decl. ¶ 7. Given that Shannon does not otherwise contest that he signed the agreement, I conclude that he signed the agreement despite his failure to recall doing so. *See Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) ("Where a party merely states that she cannot recall signing an agreement (as opposed to denying she has done so), such a declaration ordinarily fails to create a triable issue of fact.").

### B. Procedural History

Shannon filed a single-count Complaint on June 25, 2025. ECF No. 1. The parties filed their Rule 26(f) Report on September 5, 2025. ECF No. 17. That same day, Supported Living filed its Motion to Compel Arbitration, ECF No. 18 ("Def.'s Mot."), accompanied by a Memorandum in Support, ECF No. 18-1 ("Def.'s Mem."). In light of the Motion to Compel Arbitration, I found good cause to delay entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b). ECF No. 19. Shannon filed a Memorandum in Opposition on October 17, 2025. ECF No. 25 ("Pl.'s Mem."). Supported Living filed its Reply on November 14, 2025. ECF No. 28 ("Def.'s Reply").

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that a written arbitration provision in a contract involving commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to make arbitration agreements "as enforceable as other contracts, *but not more so*." *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (citation modified).

In deciding whether to grant a motion to compel arbitration brought under the FAA, a court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and "[i]n doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation modified). "[W]here the

undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Nicosia*, 834 F.3d at 229.

When moving to compel arbitration, the moving party "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com*, 380 F. App'x 22, 24 (2d Cir. 2010); *see also Barrows v. Brinker Restaurant Corporation*, 36 F.4th 45, 50 (2d Cir. 2022). The initial showing must be by a preponderance of the evidence. *Helenese v. Oracle Corp.*, No. 309-CV-351 (CFD), 2010 WL 670172, at *3 (D. Conn. Feb. 19, 2010).

Courts in the Second Circuit follow a two-part test to determine whether a claim is subject to arbitration. First, a court considers "whether the parties have entered into a valid agreement to arbitrate." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). In deciding whether a valid agreement to arbitrate exists, federal courts turn to state contract law. *Barrows*, 36 F.4th at 50. Second, if such an agreement exists and is valid, the court considers "whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128. Federal policy favors a broad interpretation of an arbitration clause's scope. Thus, if it is ambiguous as to whether the claim at issue falls within the scope of the arbitration clause, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

## III. DISCUSSION

I address below the two-part inquiry required by this Circuit to determine whether Shannon may be compelled to submit his claim to arbitration. In particular, I consider whether this agreement is valid and enforceable, and if so, whether Shannon's claim in this matter falls within its scope.

### A. No Valid Agreement to Arbitrate Exists

Supported Living bears the initial burden of "demonstrating that an agreement to arbitrate was made." *Barrows*, 35 F.4th at 50. Supported Living submits, and Shannon does not contest, that Shannon signed the Agreement, which contains an arbitration provision. Supported Living explains that under Connecticut contract law, "a contract is formed through an offer and an acceptance of that offer." Def.'s Mem. 4. According to Supported Living, Shannon executed the Agreement containing the arbitration clause in question, therefore reflecting a "clear and unmistakable intent by the parties to resolve any legal disputes related to the Plaintiff's employment through arbitration." *Id.*

Shannon responds that no valid arbitration agreement was made. Shannon maintains that "[t]he employment agreement . . . and alleged arbitration clause at issue here do not constitute a new and enforceable contract because *Defendant did not offer any new consideration* to support new contractual obligations." Pl.'s Mem. 6 (emphasis added). Relying on his declaration, Shannon asserts that he "remained an at-will employee," and as "Defendant did not promise to employ [him] for a specific period of time, and they provided no other benefit, the agreement lacks consideration." *Id.*

Supported Living, in its reply, asserts it *did* offer Shannon continued employment in exchange for the signing of the Agreement, and such a promise constituted adequate

consideration. Def.'s Reply 4-6. Furthermore, as an alternative source of consideration, Supported Living asserts that the Agreement contained a *mutual* promise to arbitrate, binding both parties to submit disputes to arbitration. Def.'s Reply 4.

The parties agree, and are correct, that such a mutual promise to arbitrate can serve as consideration. *Osborne v. Locke Steel Chain Co.*, 153 Conn. 527, 531 (1966). ("An exchange of promises is sufficient consideration to support a contract."); *Deleon v. Dollar Tree Stores, Inc.*, No. 3:16-CV-00767 (CSH), 2017 WL 396535, at *3 (D. Conn. Jan. 30, 2017). Shannon disagrees, however, as to whether the Agreement contains such a mutual promise. Pl.'s Mem. 7.

For the reasons below, I find that no consideration exists to support the arbitration provision, and therefore the arbitration provision is not valid. I thus do not reach the question of whether, if properly formed, the arbitration provision would require submission of Shannon's claims in this lawsuit to arbitration.

### 1. Connecticut Contract Law Requires Consideration for a Valid Contract

Under Connecticut contract law, a valid contract requires, first, a meeting of the minds. *Fortier v. Newington Group, Inc.*, 30 Conn. App. 505, 510 (1993); *see also Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.*, 159 Conn. 242, 246, 249 (1970) ("To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties."). Second, "for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." *Gibbs v. Conn. Gen. Life Ins. Co.*, No. CV97 0567009, 1998 WL 123010, at *2 (Conn. Super. Ct. Mar. 3, 1998). "Consideration consists of a benefit to the party promising, or a loss or

detriment to the party to whom the promise is made." *Gianetti v. Norwalk Hospital*, 211 Conn. 51, 61 (1989); *see also Osborne*, 153 Conn. at 530. Third, in bilateral contracts, where both parties exchange promises, mutuality of obligation is also required. *R. F. Baker & Co. v. P. Ballantine & Sons*, 127 Conn. 680, 683 (1941) ("To agree to do something and reserve the right to cancel the agreement at will is no agreement at all.") (citation modified).

### 2. The Agreement Did Not Alter Shannon's Status as an At-Will Employee

Supported Living asserts that the arbitration provision is supported by adequate consideration because the Agreement promised Shannon continued employment. I conclude that the Agreement did not alter the at-will terms of Shannon's employment and thus did not provide adequate consideration for the arbitration provision.

Courts have analyzed whether an arbitration provision is supported by adequate consideration under Connecticut law where the provision is agreed to by an at-will employee after employment has already commenced.

In *Gibbs v. Connecticut Gen. Life Ins. Co.*, No. CV97 0567009, 1998 WL 123010 (Conn. Super. Ct. Mar. 3, 1998), the defendant argued that an employee's (Gibbs) continued at-will employment following his receipt of an interoffice memorandum regarding a new mandatory arbitration policy constituted sufficient consideration to render the agreement binding. The Connecticut Superior Court disagreed, concluding there was no bargained-for exchange. The court reasoned that Gibbs did not acquire any benefit as a result of the arbitration agreement, and the defendant did "not suffer any detriment" as it "never promised to continue Gibbs' employment in exchange for his promise to submit claims to arbitration." *Id.* at *4. *Gibbs* relied on *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th

Cir. 1997), where the Seventh Circuit reasoned that "[w]hen an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise." *Id.* at 1132; *Gibbs*, 1998 WL 123010, at *4.

Similarly, in *Helenese v. Oracle*, No. 3:09-CV-351, 2010 WL 670172 (D. Conn. Feb. 19, 2010), the district court addressed whether continued at-will employment evidenced a bargained-for exchange sufficient to find consideration supporting an arbitration provision. Relying on *Gibbs* and *Gibson*, the court concluded that where "an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise." *Id.* at *5 (citation modified); *see also id.* ("Since the defendants in this case did not make a specific promise to continue employing Helenese in exchange for agreeing to the arbitration provision, or provide another benefit or suffer a detriment, the policy lacks consideration.").

Although it does not appear that the Connecticut Supreme Court or Appellate Court has addressed whether continued employment of at-will employees constitutes consideration for an arbitration agreement, the Connecticut Supreme Court addressed the issue in the context of a noncompete agreement in *Dur-A-Flex, Inc. v. Dy*, 349 Conn. 513, 590 (2024).[2]

At issue in *Dur-A-Flex* was whether a noncompete agreement signed by an at-will employee several years after he began working was supported by adequate consideration. The

[2] Supported Living attempts to distinguish *Dur-A-Flex* on the ground that noncompete agreements "are a different breed of contract than arbitration agreements" in that they are "significantly more burdensome on employees, and require that employees give up significant substantive rights." Def.'s Reply 6. However, *Dur-A-Flex*, like the present case, involves a circumstance where an at-will employee is asked to sign a provision giving up rights. I see no reason why the principles governing consideration differ.

Connecticut Supreme Court held that "the trial court incorrectly determined that continued employment can *never* be consideration for a noncompete agreement." *Id.* The court observed that under *Roessler v. Burwell*, 119 Conn. 289 (1934), "a promise of indefinite, continued employment for an at-will employee in exchange for the employee's promise not to compete constitutes adequate consideration to form an enforceable agreement." *Dur-A-Flex.*, 349 Conn. at 593. The court in *Dur-A-Flex* explained: "In *Roessler*, the plaintiff promised to employ the defendant indefinitely in exchange for his promise not to compete. In the present case, on the other hand, the plaintiff did not explicitly promise Samet that it would continue to employ him for any particular period." *Id.* (citation modified). The court remanded to the trial court "to determine whether the plaintiff provided adequate consideration," reasoning that "because Samet was an at-will employee, the plaintiff's forbearance of its right to terminate his employment could be valid consideration if it altered his at-will status." *Id.* at 594.

Here, Shannon asserts in his declaration that the Agreement was executed on January 3, 2024 while he was on medical leave,[3] and his "last active date of employment" was on November 29, 2023, before the Agreement was signed. Shannon Decl. ¶¶ 3, 7, 8. Shannon says he was on medical leave until his termination on March 14, 2025. *Id.* ¶ 4. According to Shannnon, Supported Living did not provide him "with any specific promises or benefits in exchange for [his] execution" of the Agreement. *Id.* ¶ 8. Moreover, Shannon maintains that

[3] The record is ambiguous as to the precise date that the Agreement was supposed to take effect. While it was signed by both parties on January 3, 2024, the Agreement is marked with "Effective: January 1, 2024" in its header. Agreement 9-11. Shannon's declaration reflects a similar ambiguity, calling the Agreement the "January 1, 2024 Agreement" when discussing the day it was effective, Shannon Decl. ¶ 7, and the "January 3, 2024 Agreement" when discussing the day it was executed, Shannon Decl. ¶ 8. Given that the discrepancy does not affect my analysis, I will use January 3, 2024 to represent the date the Agreement was supposed to become operative.

"[a]t no time did Defendant ever give me definite promises of continued employment or provide me with any other promises that would have altered my at-will employment status." *Id.* ¶ 5. In response, Supported Living argues it "offered Plaintiff continued employment, even though Plaintiff chose not to return to Defendant's employ following his medical leave." Def.'s Reply 4. However, Supported Living provides no evidentiary support at all for this statement, presumably simply relying on the Agreement attached its Motion to Compel.[4] Yet the Agreement itself merely references at-will employment. Agreement 11. Supported Living does not maintain that the Agreement changed Shannon's at-will status. Supported Living provides no details regarding its offer of continued employment including what was communicated to Shannon when he was presented with the Agreement while on medical leave.

Given the factual record before me, I am unable to identify a bargained-for exchange in connection with Shannon's execution of the Agreement. The Agreement purports to limit the fora before which Shannon may seek resolution of at least certain disputes with Supported Living. In connection with the Agreement, Supported Living did not provide any benefit to Shannon or suffer any detriment. In addition, Supported Living has provided no evidence that it promised to continue to employ Shannon "indefinitely" or "for any particular period." *Dur-A-Flex, Inc.*, 349 Conn. at 321. Instead, Supported Living simply states without citation to the record it "did in fact offer Plaintiff continued employment." Def.'s Reply 5.

Moreover, even if continued at-will work can constitute consideration supporting an arbitration agreement under some circumstances, Shannon never in fact returned to work. His

[4] Supported Living provides no declarations or any exhibits at all in support of its Motion to Compel other than the Agreement.

precise status while on "medical leave" before his official termination is unclear from the current record. There is no evidence that Shannon was capable of returning to work or that Supported Living would have permitted him to return to work prior to his official termination.[5]

Accordingly, given that Shannon never in fact worked after signing the Agreement and Supported Living has failed to provide evidence that it promised Shannon could continue to work "indefinitely" or for a particular period of time, I conclude that the Agreement's arbitration provision is not supported by adequate consideration under Connecticut law.

**3. The Agreement Does Not Contain a Mutual Duty to Arbitrate**

Supported Living proposes an alternative source of consideration. In particular, it argues that the arbitration clause was mutually binding, requiring *both* parties, not just Shannon, to submit to arbitration in the event of a dispute. Def.'s Reply 4. Although Shannon agrees that such a mutual promise would constitute consideration were it to exist, he contests that "the arbitration clause in the instant case imposes no reciprocal duty on Defendant to

[5] Several courts in this District have concluded, based on the facts of those particular cases, that an at-will employee's continuation of work after being presented with an arbitration policy or signing an arbitration agreement provided sufficient consideration. *See Deleon v. Dollar Tree Stores, Inc.*, No. 3:16-cv-00767 (CSH), 2017 WL 396535, at *4 (D. Conn. Jan. 30, 2017) (concluding that continued employment provided adequate consideration); *Capone v. Electric Boat Corp.*, No. 3:06–cv–1249 (JCH), 2007 WL 1520112 (D. Conn. May 18, 2006) (same); *Comfort v. Mariner Health Care, Inc.*, No. CIV.A. 304CV2142JCH, 2005 WL 977062 (D. Conn. Apr. 26, 2005) (stating that "[w]here an individual's employment is at-will, continued employment is sufficient consideration to render an arbitration agreement binding" but denying motion to compel arbitration because of lack of mutuality in the agreement); *Fahim v. CIGNA Invs., Inc.*, No. 3:98CV232, 1998 WL 1967944, at *3 (D. Conn. Sept. 10, 1998) ("Plaintiff's continued employment itself is enough consideration for the new contract of employment which is subject to the added terms."). These cases are distinguishable from the present case as there is no evidence in the record here that Shannon actually worked after he signed the agreement. In addition, the cases were decided before the Connecticut Supreme Court's guidance in *Dur-a-Flex*.

arbitrate claims." Pl.'s Mem. 7. Based on the full text of the arbitration clause in question, I agree with Shannon.

The arbitration clause reads: "If there are any legal disputes during or after your time of employment, by signing this document, you agree not to participate in class actions against the company and instead resolve any disputes through individual arbitration." Agreement 11. When interpreting a contract, "the rules governing the interpretation of contracts and statutes require courts to defer to the plain and ordinary meaning of language, unless such language gives rise to ambiguity." *Foundation for the Adv. of Catholic Schools, Inc. v. Blair*, 230 Conn. App. 793, 810 (2025). Here, the arbitration clause may only be construed to bind the employee signatory to arbitration. The "you" that is bound to arbitration must have had a "time of employment" and must have had the ability to "participate in class actions against the company." Neither is possible for the employer/company. Supported Living does not have a time of employment, nor can it participate in a class action against itself. Therefore, this arbitration clause cannot be read to bind Supported Living, and as a result, consideration cannot be found based on a mutual promise to arbitrate.

**4. Shannon's Unconscionability Argument**

In addition to Shannon's argument targeting the validity of the contract, Shannon further claims that the arbitration provision is unconscionable and therefore unenforceable. Pl.'s Mem. 9-12. Because I have found that no valid contract exists due to lack of consideration, I do not reach the question of whether the provision would have been enforceable if validly formed.

### B. Scope of the Arbitration Agreement

Given that no valid arbitration provision exists, I do not reach the question of whether the dispute here falls within the scope of the arbitration provision.

## IV. CONCLUSION

For the foregoing reasons, Supported Living's Motion to Compel Arbitration is denied.

**SO ORDERED.**

New Haven, Connecticut
September 21, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge